UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SABER INTERACTIVE INC., | CASE NO. 2:21-cv-01201-JHC |
| Plaintiff, | AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND PLAINTIFF SABER INTERACTIVE INC.'S MOTION TO FILE THIRD AMENDED COMPLAINT |
| v. | |
| OOVEE, LTD., ZANE SAXTON, DEVIN MILSOM and VINCE MILSOM, | |
| Defendants. | |

## I.

### INTRODUCTION

This matter comes before the Court on Defendant Oovee, LTD's Motion to Dismiss Plaintiff Saber Interactive Inc.'s Second Amended Complaint (SAC) (Dkt. # 27) and Plaintiff Saber Interactive Inc.'s Motion for Leave to File Third Amended Complaint (TAC) (Dkt. # 37). Having reviewed the materials in support of and in opposition to the motions, for the reasons below, the Court GRANTS the Motion to Dismiss, DISMISSES the SAC without prejudice and

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 1

with leave to amend, and GRANTS the Motion for Leave to File TAC.  This amended order

replaces and supersedes the Court's prior order, *see* Dkt. # 46, issued on August 30, 2022.[1]

## II.

### BACKGROUND

For Oovee's Motion to Dismiss, the Court presumes as true all facts alleged in Saber's

Second Amended Complaint (Dkt. # 20).  *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247

(9th Cir. 2013) ("On a motion to dismiss, the court presumes that the facts alleged by the

plaintiff are true." (quoting *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir. 1982))).

Unless stated otherwise, the facts below are from that complaint.

Generally, game developers program simulated driving games to provide the consumer

with the experience of driving a vehicle that "operates as closely to the real thing as possible."

Dkt. # 20 at 4.  Game developers also "obtain a license from the vehicle manufacturer to feature

a particular vehicle in a game."  *Id.*  Video game consumers know games feature simulated

vehicles licensed by the vehicle manufacturer.  *Id.*  Game developers disclose these licenses.  *Id.*

Peterburgsky traktorny zavod JSC ("PTZ"), which is known under the brand name

"Kirovets," manufactures and sells tractors, including the K-700.  *Id.* at 5–6.  This is an image of

the K-700:

---

[1] In the prior order, the Court granted Oovee's motion to dismiss, dismissed the complaint with
leave to amend, and granted Saber's motion to file a third amended complaint.  Dkt. # 46.  Saber then
filed a motion for reconsideration in which it observed that the Court's prior order mischaracterized the
"SHERP" vehicle as a lookalike of the K-700 vehicle at issue in this case.  *See* Dkt. # 47; *see also* Dkt. #
50.  In response, Oovee agreed that the prior order mischaracterized the relationship between the two
vehicles but argued that this mistake should not change the Court's ultimate conclusion to dismiss the
SAC.  *See* Dkt. # 49.  This amended order remedies the factual mistake identified by the parties and
modestly adjusts the order's reasoning in accordance with that correction.  But the Court agrees with
Oovee that proper characterization of the relationship between the SHERP and K-700 vehicles should not
alter the Court's ultimate conclusion.

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 2



*Id.* at 6.  Kirovets sells K-700s to consumers in the United States.  *Id.*  K-700s have "two discrete but connected tractor parts (a front and a back), the pair of distinctive large wheels for each part, the front part having a box cabin and the extended engine cover with grill-style grate, and the back part featuring mostly just the large pair of wheels."  *Id.*

Saber is a video game developer.  Dkt. # 20 at 3.  It develops a simulated driving video game called *Mudrunner* that allow users to choose from different vehicles to drive in a particular environment.  Dkt. # 20 at 3–5.  Saber sells *Mudrunner* on Steam, a Bellevue-based "digital contact distribution platform" from which consumers can purchase games.  *Id.* at 11.

Saber uses the K-700 design in *Mudrunner*:



*Id.* at 7, 9.  Unlike the other vehicles featured in *Mudrunner*, the K-700 has articulated steering.  *Id.* at 8.  Under a December 29, 2020 License Agreement between it and PTZ, Saber is the "exclusive licensee with respect to various intellectual property rights related to PTZ's Kirovets tractors."  *Id.* at 7.  The Licensing Agreement gives Saber "'rights to take legal and other enforcement actions, including retroactive rights, to damages and injunctive relief against any

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 3

entity or product that has previously infringed, is currently infringing or will in the future infringe on the granted rights at any time in any territory and to collect damages for such infringement.'" *Id.*

Defendant Oovee, as well as individual Defendants Zane Saxton, Devin Milsom, and Vince Milsom (collectively, "Oovee"), sells a simulated driving video game called *Spintires*. *Id.* at 2. Oovee sells *Spintires* worldwide through Steam. *Id.* at 3, 11. In November 2015, Oovee released an update to *Spintires* that included the K-700:



*Id.* at 10. Oovee advertised *Spintires* with a video trailer, and "roughly half of the trailer segment introducing [new] vehicles was dedicated to shots involving solely the K-700." *Id.* In 2020, Oovee released another update to *Spintires* that included a new vehicle called the SHERP ARK 10x10 ATV. *Id.* at 11. Oovee promoted the SHERP as using "articulating steering like the K-700." *Id.* Oovee provided a disclaimer, which noted that "SHERP is a registered trademark of Quadro International LLC and is being used under license." *Id.* The disclaimer further stated that "[a]ll other trademarks are the property of their respective owners. All characters and vehicles appearing in Spintires ® are fictitious (except where licensed). Any representations to real-life persons (living or dead), or real-world vehicle designs (except where licensed), is purely coincidental." *Id.*

On or about December 30, 2020, Steam removed *Spintires* because of "its unauthorized use of the exclusively-licensed intellectual property." *Id.* at 11–12.

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 4

1

Saber sued Oovee on September 2, 2021.  Dkt. # 1.  On April 26, 2022, Saber filed its

2

SAC, which contained three claims: (1) unfair competition under the Section 43(a) of the

3

Lanham Act, 15 U.S.C. § 1125; (2) unfair competition under Washington's Consumer Protection

4

Act (WCPA), Washington Revised Code (RCW) 19.86.010; and (3) unjust enrichment.  Dkt.

5

# 20 at 13–14.

6

Oovee moves to dismiss Saber's SAC under Federal Rule of Civil Procedure 12(b)(6) for

7

failure to state a claim.  Dkt. # 27 at 13.  It argues that the First Amendment bars Saber's claims,

8

and that even if it does not, Saber has not pleaded facts sufficient to survive a motion to dismiss.

9

*Id.* at 8, 14.

10

Saber filed a Motion for Leave to File TAC.  Dkt. # 37.  The proposed TAC alleges that

11

on June 12, 2022, Saber became aware that Oovee published a press release titled "Indie Gaming

12

Developers Increasingly at Risk of Losing IP to Ruthless Industry Giants."  Dkt. ## 37 at 2; 37-1

13

at 15.  It alleges that the press release "falsely claim[s] that Saber stole Oovee's intellectual

14

property" and makes it look like a "bully."  Dkt. # 37 at 2.  The proposed TAC also alleges that

15

Oovee "knew the statements were false and made them intentionally," and that the statements

16

harmed and will harm Saber's relationships with consumers who purchase its games and

17

distributors who market its games.  Dkt. # 37-1 at 17.  It alleges that the damages exceed

18

$100,000.  *Id.*  The proposed TAC seeks to add claims for defamation and tortious interference

19

with business relationships and expectancies.  Dkt. ## 37 at 2; 37-1 at 20–21.

20
21
22
23
24

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 5

# III.

## ANALYSIS

A.      Oovee's Motion to Dismiss the SAC

       1.      Rule 12(b)(6)

In considering a motion under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the nonmoving party. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Id.* at 679. A court may dismiss a complaint under Rule 12(b)(6) that lacks a "cognizable legal theory" or fails to allege "sufficient facts" under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

       2.      Unfair Competition under the Lanham Act

In the SAC, Saber claims that Oovee engaged in unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits persons from misleading consumers about the origin or nature of products they sell. Dkt. # 20 at 13. Saber says that the unfair competition arises from Oovee's unauthorized use of its trademark and trade dress. *Id.* at 2. Oovee moves for dismissal, claiming that the First Amendment bars the Lanham Act claim and, even if not, Saber does not sufficiently plead facts to state a claim for relief under the Lanham Act. Dkt. # 27 at 16, 24. Saber responds that the First Amendment does not bar its

Lanham Act claim because *Spintires* is not an expressive work and, even if considered an expressive work, Oovee explicitly misleads consumers about Saber's endorsement. Dkt. # 31 at 7. Saber also contends that it has alleged sufficient facts to support its Lanham Act claim and survive Oovee's Motion to Dismiss. *Id.* at 7, 25.

Section 43(a) of the Lanham Act provides a civil cause of action against:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

15 U.S.C. § 1125(a)(1).

a.       Oovee's First Amendment Defense

Oovee says that the First Amendment bars Saber's Lanham Act claim. Dkt. # 27 at 8.

Generally, courts apply the "likelihood-of-confusion test" when evaluating an infringement claim under the Lanham Act. *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018) (citation omitted). But when "artistic expression is at issue," the likelihood-of-confusion test "fails to account for the full weight of the public's interest in free expression." *VIP Prod. LLC v. Jack Daniel's Properties, Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020) (quoting *id.*). "Section 43(a) protects the public's interest in being free from consumer confusion about affiliations and endorsements, but this protection is limited by the First Amendment, particularly if the product involved is an expressive work." *Brown*, 724 F.3d at 1239; *see also Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) ("Were we to ignore the expressive value

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 7

that some marks assume, trademark rights would grow to encroach upon the zone protected by the First Amendment.").

Thus, when the alleged trademark infringement concerns artistic expression, courts in the Ninth Circuit apply the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), to balance the First Amendment interest in protecting artistic expression against the Lanham Act's purpose in securing trademark rights. *See Mattel*, 296 F.3d at 902 (adopting the *Rogers* test); *Gordon*, 909 F.3d at 267 (noting that after *Mattel*, the court has "extended the *Rogers* test" to apply not only to the title of an expressive work, but also to the body of that work); *VIP Products*, 953 F.3d at 1174 (applying the *Rogers* test in a trade-dress infringement case); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008).

"The *Rogers* test requires the defendant to make a threshold legal showing that its allegedly infringing use is part of an expressive work." *Gordon*, 909 F.3d at 264. "If the defendant successfully makes that threshold showing, then the plaintiff claiming trademark infringement bears a heightened burden—the plaintiff must satisfy not only the likelihood-of-confusion test but also at least one of *Rogers*'s two prongs." *Id.*; *see also VIP Products*, 953 F.3d at 1174. The first prong asks whether the use of the trademark has some artistic relevance: "[T]he Lanham Act should not be applied to expressive works 'unless the [use of the trademark or other identifying material] has no artistic relevance to the underlying work whatsoever.'" *Brown*, 724 F.3d at 1242 (alteration in original) (quoting *Rogers*, 875 F.2d at 999). The second prong asks whether the defendant's use of the trademark "explicitly misleads as to the source or the content of the work." *Id.*; *see also Rogers*, 875 F.2d at 1000 ("[T]he slight risk that . . . use of a celebrity's name might implicitly suggest *endorsement or sponsorship* to some people is

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 8

outweighed by the danger of restricting artistic expression, and [in cases where there is no explicit misleading] the Lanham Act is not applicable." (emphasis added)).

i.     Expressive Work

Before applying the *Rogers* test, the defendant bears the initial burden of demonstrating "that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon*, 909 F.3d at 264. "In determining whether a work is expressive, we analyze whether the work is 'communicating ideas or expressing points of view.'" *VIP Products*, 953 F.3d at 1174 (quoting *Mattel*, 296 F.3d at 900). A work need not be "the expressive equal of *Anna Karenina* or *Citizen Kane*" to merit consideration as an expressive work. *Brown*, 724 F.3d at 1241. And a work "is not rendered non-expressive simply because it is sold commercially." *VIP Products*, 953 F.3d at 1175.

Oovee says that "[b]ecause it is a video game," *Spintires* is a "highly expressive work." Dkt. # 27 at 16. Saber responds that *Spintires* is not an expressive work because it does not "express ideas" or "social messages"; it has no characters, dialogue, or plot; and its music is "simplistic" and "simply background to the driving." Dkt. # 31 at 18. Saber contends that "[t]he simulated world is generic and computer-generated," and that "*Spintires* has no or minimal artistic expression." Dkt. # 20 at 9.

Based on the SAC, the Court determines that *Spintires* is an expressive work. The Supreme Court has explained that "[l]ike the protected books, plays, and movies that preceded them, video games communicate ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world)." *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 789 (2011). Thus, "video games qualify for First Amendment

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 9

protection."  *Id.*  Two years later, in *Brown v. Electronic Arts, Inc.*, the Ninth Circuit recognized that "there may be some work referred to as a 'video game' (or referred to as a 'book,' 'play,' or 'movie' for that matter) that does not contain enough of the elements contemplated by the Supreme Court to warrant First Amendment protection as an expressive work."  724 F.3d at 1241.  While the Ninth Circuit declined to "draw a line between expressive video games and non-expressive video games," it determined that an NFL football video game was an expressive work because it "features characters (players), dialogue (between announcers), plot (both within a particular simulated game and more broadly), and music.  Interaction between the virtual world of the game and individuals playing the game is prevalent."  *Id.*

Oovee persuasively compares *Spintires* to the video game in *VIRAG, S.R.L. v. Sony Computer Entertainment America LLC*, in which the Ninth Circuit affirmed a district court's determination that a racecar driving simulation video game contained expressive elements like "characters, plot, music, and extensive interactions between players and the games' virtual world," and was therefore an expressive work entitled to First Amendment protection.  No. 3:15-cv-01729-LB, 2015 WL 5000102, at *1 (N.D. Cal. Aug. 21, 2015), *aff'd*, 699 F. App'x 667, 668 (9th Cir. 2017).  In that case, the district court considered the racecar drivers to be the characters and the plot to be the drama of the races.  2015 WL 5000102, at *8.  Oovee says *Spintires* is like the game in *VIRAG* because it allows users to interact with the virtual world.  Dkt. # 36 at 8–9.

Saber's complaint states that "*Spintires* is an off-roading simulation that allows users to navigate a wilderness environment in particular vehicles," that "*Spintires* allows a user to pick a vehicle and then drive it around in the simulated world," and that it tries to "duplicate the real-world experience of driving a particular vehicle."  *Id.* at 9–10.  Users interact with the virtual world by selecting a vehicle (which is like a character) and by navigating the virtual environment

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 10

(which is like a plot).  These features render the work expressive, like the video games in *Brown* and *VIRAG*.  *See also Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 898 (C.D. Cal. 2013) (holding that the video game *Call of Duty* is an expressive work because the game features "distinctive characters," requires that the players "interact with the virtual environment as they complete a series of combat missions," and allows players to "control the fate of characters and the world they inhabit").

Oovee has made a threshold legal showing that *Spintires* may be an expressive work. The burden shifts to Saber to overcome the *Rogers* test by satisfying either of the test's two prongs.

## ii.    Artistic Relevance

To satisfy the first prong, Saber must show that the use of the K-700 has no artistic relevance to *Spintires*.  *See Gordon*, 909 F.3d at 269.  Under this prong "the level of artistic relevance of the trademark or other identifying material to the work merely must be above zero," so "even the slightest artistic relevance" is sufficient.  *Id.* at 1243, 1245 (citation omitted).  While Saber says that "*Spintires* has no or minimal artistic expression," it does not explain how Oovee's use of the K-700 is artistically irrelevant.  Dkt. # 31, at 11.  Thus, the Court does not consider this prong.

## iii.    Explicitly Misleading

To satisfy the second prong of the *Rogers* test, Saber must show that Oovee's use of the K-700 in *Spintires* "explicitly misleads" consumers about its source and to believe that PTZ or Saber endorsed or sponsored *Spintires*.  "Even if the use of a trademark or other identifying material is artistically relevant to the expressive work, the creator of the expressive work can be subject to a Lanham Act claim if the creator uses the mark or material to 'explicitly mislead[ ]

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 11

[consumers] as to the source or the content of the work.'" *Brown*, 724 F.3d at 1245 (alterations in original) (quoting *Rogers*, 875 F.2d at 999).  To satisfy this prong of the *Rogers* test, "[i]t is key here that the creator must *explicitly* mislead consumers."  *Id.*  Explicitly misleading "is a high bar that requires the use to be an explicit indication, overt claim, or explicit misstatement about the source of the work."  *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020) (quotation marks omitted) (quoting *Brown*, 724 F.3d at 1245); *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1199 (9th Cir. 2017).  Evidence of consumer confusion does not necessarily make a use explicitly misleading.  *See Dr. Seuss Enters.*, 983 F.3d at 462.

Based on the facts as pleaded in the SAC, the Court concludes that Oovee did not explicitly mislead consumers.  First, Saber argues that "[w]hen consumers play *Spintires*, they are likely to be confused as to whether PTZ has endorsed or sponsored or is associated with *Spintires*," and that "[c]onsumers are also likely to be confused as to whether [Saber] has endorsed, owns, or sponsored *Spintires*."  Dkt. # 20 at 11, 13. Saber says that this confusion is created, at least in part, because "[c]onsumers . . . expect that actual vehicles featured in simulations are licensed." Dkt. # 31 at 21.  But alleging a likelihood of confusion does not necessarily suffice to show that Oovee "explicitly misled consumers" as to PTZ's or Saber's involvement or endorsement.  Rather, this prong of the *Rogers* test requires the use to be an "explicit indication," "overt claim," or "explicit misstatement" about the source of the work. *Brown*, 724 F.3d at 1245 (quoting *Rogers*, 875 F.2d at 1001).  Even if the public believes that vehicles in video games are typically licensed (potentially generating consumer confusion), Saber cannot satisfy this prong without pointing to an explicitly misleading statement.  *Cf. id.*

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 12

(noting that this prong of the *Rogers* test is not satisfied even if "a majority of the public believes that identifying marks cannot be included in products without permission").

Second, Saber argues that Oovee's disclaimers misrepresented the company's relationship with Saber, PTZ, and the K-700 vehicle. Dkt. ## 20 at 11; 31 at 21. In an advertisement for the "SHERP" vehicle (an all-terrain vehicle unaffiliated with the K-700, PTZ, or Saber), Oovee included the following disclaimer: "All other trademarks are the property of their respective owners. All characters and vehicles appearing in Spintires ® are fictitious (except where licensed). Any representations to real-life persons (living or dead), or real-world vehicle designs (except where licensed), is purely coincidental." Dkt. # 20 at 11. Saber says that the disclaimer suggests that Oovee has "licensed any 'real-world vehicle designs,'" and that this, in turn, inaccurately "conveys to consumers that PTZ endorsed the use of the K-700's vehicle design." Dkt. # 31 at 21.

But Saber misinterprets the language of the disclaimer. In the disclaimer, Oovee does *not* purport to have obtained a license for all "real-world vehicles." To the contrary, the disclaimer expressly states that all vehicles appearing in the game are "fictitious" "*except where licensed*," and that unless a vehicle is licensed, any similarity to a "real-world vehicle design . . . is purely coincidental." Dkt. # 20 at 11 (emphasis added). Moreover, the disclaimer further notes that "SHERP is a registered trademark of Quadro International LLC and is being used under license." *Id.* This shows that Oovee clearly indicates when a vehicle is licensed (like it did for the SHERP vehicle). Oovee's failure to make a similar statement as to the K-700 vehicle suggests, consistent with its disclaimer that any similarity to a "real-world vehicle design . . . is purely coincidental" unless licensed, that any vehicle resembling the K-700 is *not* being used under license. To be sure, the disclaimer is far from a model of clarity. But it does not *explicitly*

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 13

mislead consumers into believing that Saber or PTZ is affiliated with *Spintires*. *See Brown*, 724 F.3d at 1245 (requiring an "overt claim" or "explicit misstatement" about the source of the work to satisfy this prong of the *Rogers* test).

Third, Saber argues that Oovee misled consumers "by calling out the K-700, describing it by name, and showing it as distinct from the other vehicles" in a promotional video trailer, suggesting that Saber or PTZ endorses *Spintires*.[2]  Dkt. ## 31 at 21–22; 20 at 10.  But "use of a mark alone is not enough to satisfy this prong of the *Rogers* test." *Brown*, 724 F.3d at 1245. Therefore, the mere fact that *Spintires* uses the K-700 name or includes the vehicle in the video game or its promotional materials is not sufficient.

In conclusion, Saber has not plausibly alleged that Oovee's use of the K-700 mark or trade dress is explicitly misleading.  *See Destefani v. Ubisoft Ent.*, No. 220CV10126FLAAFMX, 2022 WL 649262, at *5 (C.D. Cal. Jan. 10, 2022) (collecting trademark cases involving video games in which courts held that the trademark use was not explicitly misleading). The "explicitly misleading" standard is a "high bar" that is not overcome by the mere possibility of consumer confusion, and Saber has not cleared that bar with its second amended complaint. *Dr. Suess Enters.*, 983 F.3d at 462.

> b. Trade Dress Infringement

Oovee argues that even if the First Amendment does not bar Saber's Lanham Act claim, the Court should dismiss it for failure to state a claim for relief.  Dkt. # 27 at 24.  "Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks Billiards*, 251 F.3d

---

[2] Oovee responds that the promotional video did not "'describe by name' each vehicle," and that the "name of the vehicle is never shown nor spoken."  Dkt. # 27 at 21–22.

1252, 1257 (9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir.1993)).  "To withstand a motion to dismiss an infringement claim under § 43(a) of the Lanham Act—whether it be a trademark claim or a trade dress claim—a plaintiff must identify the mark and allege three basic elements: (1) distinctiveness [or secondary meaning]; (2) nonfunctionality; and (3) likelihood of consumer confusion." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 562 (C.D. Cal. 2005) (footnote omitted) (citing *Clicks Billiards*, 251 F.3d at 1258).  Oovee says Saber does not allege sufficient facts to identify the trade dress, the secondary meaning of the trade dress, and the non-functionality of the trade dress.[3]  Dkt. # 27 at 25.

### i.    Identification of Trade Dress

As an initial matter, "[a] plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice." *Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010).  Oovee says Saber failed to identify the trade dress with sufficient clarity, and that the trade dress is otherwise generic and ambiguous.  Dkt. # 27 at 25–27.

In *Lepton Labs, LLC v. Walker*, the court found that a plaintiff's list of nine website features sufficed to allege a protectable trade dress.  55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014). The court concluded that at the motion-to-dismiss stage, "[s]o long as a plaintiff has alleged a complete recitation of the concrete elements of its alleged trade dress, it should be allowed to proceed." *Id.*  In *Deckers Outdoor Corp. v. Fortune Dynamics, Inc.*, the court held that a

---

[3] While Oovee discusses Saber's likelihood of confusion allegations in the context of the First Amendment and *Rogers* test's "explicitly misleading" prong, Oovee does not address those allegations here.

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 15

description of a boot's style and the placement of the boot's panels, edges, lining, and buttons, paired with three images of the boot, was sufficient to describe the elements of the trade dress. No. CV 15-769 PSG (SSX), 2015 WL 12731929, at *4 (C.D. Cal. May 8, 2015).

Saber identifies the K-700 trade dress as "the two discrete but connected tractor parts (a front and a back), the pair of distinctive large wheels for each part, the front part having a box cabin and the extended engine cover with grill-style grate, and the back part featuring mostly just the large pair of wheels." Dkt. # 20 at 6. Saber also includes photographs of PTZ's K-700, as well as *Mudrunner*'s and *Spintires*'s versions of the K-700. *Id.* at 6, 8–10. The combination of Saber's photographs and the description of the K-700 suffice to put Oovee on notice of Saber's trade dress claim and avoid dismissal on this basis.

### ii.     Distinctiveness and Secondary Meaning

Trade dress can be inherently distinctive or can acquire distinctiveness. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000). "[A] mark is inherently distinctive if '[its] intrinsic nature serves to identify a particular source.'" *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "[A] mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning." *Id.* at 211.

"A trade dress has acquired secondary meaning when consumers associate the design features with a particular producer." *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018). "Some of the relevant factors for determining secondary meaning include the exclusivity, manner, and length of use of the trade dress, the amount and manner of advertising, the amount of sales, and proof of intentional copying by the defendant." *Id.* Whether the K-700 is distinctive and obtained a secondary meaning involves a question of fact to be determined by a

1   jury.  *See Glassybaby, LLC v. Provide Gifts, Inc.*, No. C11-380 MJP, 2011 WL 2218583, at *2

2   (W.D. Wash. June 6, 2011).

3       Oovee argues that Saber "fails to allege *how* the generic features of 'large wheels', a 'box

4   cabin' and 'extended engine cover with grill-style grate' have or could establish a secondary

5   meaning," and thus that Saber's allegations are conclusory and insufficient.  Dkt. # 27 at 27.  But

6   in addition to alleging that the K-700's separate front and back tractor parts with large wheels,

7   box cabin, and extended engine cover with a grate are distinctive characteristics that provide

8   secondary meaning, Saber also alleges it acquired the secondary meaning "over time."  Dkt. # 20

9   at 6.  This suggests an extended "length of use" of the trade dress.  *Adidas Am.*, 890 F.3d at 754.

10  Saber also alleges that "[t]he popularity and success of the K-700 has led to several subsequent

11  related models sharing a similar design.  In fact, PTZ has always used the aforementioned

12  distinctive, nonfunctional characteristics in the production of its tractors for the sole purpose of

13  indicating its Kirovets brand."  *Id.*  This indicates that the K-700 features plausibly serve to

14  identify PTZ and Kirovets.  Construing the facts presented in the SAC in the light most favorable

15  to Saber, it has alleged sufficient facts to avoid dismissal based on distinctiveness and secondary

16  meaning.

17      Oovee also argues that a trade dress must acquire its secondary meaning within the

18  United States, which, it says, the K-700 has not done.  Dkt. # 27 at 27.  Oovee cites cases stating

19  that a trademark is only entitled to protection in the geographic area in which it established a

20  secondary meaning.  *See Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.*, 391 F.3d 1088, 1096–

21  97 (9th Cir. 2004); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987–88 (9th Cir. 1995).  While Saber

22  alleges "that PTZ expended significant resources to produce, market, and sell [K-700s]

23  throughout the world," Saber also alleges that "PTZ has been distributing K-700-style tractors to

24  AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 17

consumers in the United States for more than a decade." Dkt. # 20 at 5–6. Construing the facts in the SAC in the light most favorable to Saber, Saber has adequately pleaded that the K-700 has gained distinctiveness in the United States through PTZ's distribution of them in the United States for decades.

### iii.    Functionality

"Trade dress protection extends only to design features that are nonfunctional." *Clicks Billiards*, 251 F.3d at 1258. "A product feature is functional 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage.'" *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)). Courts "consider several factors in determining whether trade dress is functional: '(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture.'" *Clicks Billiards*, 251 F.3d at 1260 (quoting *Disc Golf*, 158 F.3d at 1006)). "In determining functionality, a product's trade dress must be analyzed as a whole." *Int'l Jensen*, 4 F.3d at 823.

Here, Saber asserts that the K-700's nonfunctional features are the front and back tractor parts, large wheels, box cabin, and extended engine cover with a grate. Dkt. # 20 at 6. But Saber does not explain *how* these features are non-functional. It is unclear from the complaint whether the combination of identified features provide the K-700 with a "utilitarian advantage," for example, or whether such features are ornamental and aesthetic. *Clicks Billiards*, 251 F.3d at 1260. The complaint therefore provides little more than "a legal conclusion couched as a factual

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 18

allegation." *Iqbal*, 556 U.S. at 678 (citation omitted)*; see also id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As the court observed in *Glassybaby*, a plaintiff alleging trade dress infringement "must plead with at least some detail what the purported design is and *how* it is nonfunctional." 2011 WL 2218583, at *2 (emphasis added). And while functionality is a question of fact, *see Clicks Billiards*, 251 F.3d at 1258, Saber has pleaded no facts to create a "reasonable inference" that the identified features are nonfunctional. *Iqbal*, 556 U.S. at 678. Because Saber cannot rely on "conclusory statements," and instead must plead with at least some detail as to functionality, it has not satisfied Rule 12(b)(6) on this issue.[4] *Iqbal*, 556 U.S. at 678–79; *see also Glassybaby*, 2011 WL 2218583, at *2.

3.  Unfair Business Practice under the WCPA

Oovee says that if Saber's Lanham Act claim fails on First Amendment grounds, its WCPA claim necessarily fails, too. Dkt. # 27 at 12, 23–24. Saber's WCPA claim is based on the same theory of liability as its Lanham Act claim: that Oovee's unauthorized use of Saber's trademark and trade dress is deceptive, and thus constitutes an unfair business practice under both the Lanham Act and the WCPA. Because Saber's Lanham Act claim fails under the *Rogers* test, its WCPA claim also fails. *Cf. E.S.S.*, 547 F.3d at 1101 (dismissing claims brought under California's unfair-competition law because "the First Amendment defense applies equally to [the plaintiff's] state law claims as to its Lanham Act claim"); *Entrepreneur Media, Inc. v. Smith*,

---

[4] Saber says that Oovee misrepresents the applicable test by relying on cases decided at the summary judgment stage. Dkt. # 31 at 28. But Oovee cites *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001) and *Millennium Labs. v. Ameritox, Ltd.*, 817 F.3d 1123 (9th Cir. 2016) to state the factors district courts consider when determining whether a feature is functional. Dkt. # 27 at 29–30. And those factors are the same ones the court in *Glassybaby* explained that a plaintiff must allege to survive a Rule 12(b)(6) motion to dismiss. 2011 WL 2218583 at *2; *see also Kremerman v. Open Source Steel, LLC*, No. C17-953-BAT, 2017 WL 3970894, at *4 (W.D. Wash. Sept. 8, 2017).

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 19

279 F.3d 1135, 1153 (9th Cir. 2002); *Atlas Equip. Co., LLC v. Weir Supply Grp., Inc.*, No. C07-1358Z, 2009 WL 4670154, at *16 (W.D. Wash. Sept. 15, 2009) (dismissing the plaintiff's WCPA claim because it was "premise[d]" on the Lanham Act trade-dress infringement claim), *aff'd sub nom. Atlas Equip. Co. LLC v. Weir Mins. Australia Ltd.*, No. 09-36151, 2011 WL 52455 (9th Cir. Jan. 6, 2011).

Washington courts have similarly dismissed claims brought under the WCPA when those claims would conflict with the First Amendment.  In *State v. TVI, Inc.*, for example, the court held that the WCPA, as applied to the state's attempted regulation of allegedly deceptive charitable solicitation, violates the First Amendment because it did not provide "sufficient breathing room for protecting speech."  18 Wash. App. 2d 805, 824, 493 P.3d 763 (2021) (quoting *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.,* 538 U.S. 600, 617 (2003)), *review granted*, 199 Wash. 2d 1005, 506 P.3d 642 (2022).  Thus, the court dismissed the WCPA claims.  *Id.*; *see also Washington League for Increased Transparency & Ethics v. Fox News*, 19 Wash. App. 2d 1006 (2021) (unpublished) (holding that the First Amendment barred the plaintiff's WCPA claim).

4.      Unjust Enrichment

To state a claim for unjust enrichment under Washington law, a plaintiff must allege: "(1) that [defendant] received a benefit, (2) at [plaintiff's] expense, and (3) the circumstances make it unjust for [the defendant] to retain the benefit without payment."  *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (citing *Young v. Young*, 164 Wash. 2d 477, 484–85 (2008)).  Saber alleges that Oovee benefits from the "unauthorized use of the exclusively-licensed intellectual property."  Dkt. # 20 at 14.  Saber says that "[w]hen a consumer purchases *Spintires*, Defendants profit financially from the unauthorized use of the

exclusively-licensed intellectual property that they wrongfully misappropriated and incorporated into *Spintires*." *Id.* at 12.

But as Oovee observes, "[a] license is only required where the use would otherwise infringe the Plaintiff's mark." Dkt. # 27 at 31.  Under the *Rogers* test, Oovee did not impermissibly infringe on Saber's mark and trade dress.  As a result, Oovee was not required to obtain a license.  Thus, Oovee has not "received a benefit" at Saber's expense under circumstances that would make it "unjust for [Oovee] to retain the benefit without payment." *Cousineau*, 992 F. Supp. 2d at 1129 (citation omitted).  Saber's unjust-enrichment claim fails. *See Caiz v. Roberts*, 382 F. Supp. 3d 942, 952–53 (C.D. Cal. 2019) (dismissing the plaintiff's Lanham Act claim under the *Rogers* test, and then dismissing the plaintiff's unjust-enrichment claim because that claim "was dependent on a finding of infringement of a protectable mark").

    5.    Leave to Amend

Saber requests that, if the Court dismisses its complaint for failure to state a claim, the Court grant it leave to amend. Dkt. # 31 at 29.  "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with . . . the court's leave.  The court should freely give leave when justice so requires.").  Because Saber could cure its claims by alleging other facts, the Court grants leave to amend.

B.    Saber's Motion for Leave to File TAC

After Oovee moved to dismiss the SAC (Dkt. # 27), Saber moved for leave to file a TAC (Dkt. # 37) under Rule 15(a)(2).  Saber seeks to add claims for defamation and tortious

interference.  Dkt. # 37 at 2.  Saber alleges that Oovee published a press release titled "Indie Gaming Developers Increasingly at Risk of Losing IP to Ruthless Industry Giants," that Ooovee "falsely claim[ed] that Saber stole Oovee's intellectual property," and that Oovee's statements made Saber look like a "bully."  *Id.*

1.      Rule 15

Oovee argues that "although titled as a motion seeking leave to amend, Plaintiff is really seeking leave to supplement its SAC pursuant to [Rule] 15(d)."  Dkt. # 40 at 8.  Oovee asks the Court to treat Saber's Motion for Leave to File TAC as a motion to supplement under Rule 15(d)—not a motion to amend under Rule 15(a)—and deny it because the newly asserted claims do not share the same concern as or focal point to the claims asserted in the SAC.  Dkt. # 40 at 10–12.

Rule 15(a) governs amended pleadings.  Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "In general, a court should liberally allow a party to amend its pleading."  *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).  A court may deny a motion for leave to amend "only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'"  *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Rule 15(d) governs supplemental pleadings.  Under Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be

supplemented."  Fed. R. Civ. P. 15(d).  Rule 15(d) operates much like Rule 15(a), and "the standard for Rule 15(d) supplementation and Rule 15(a) amendment are the same."  *Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 325, 330 (D. Ariz. 2018); *see also Yates v. Auto City 76*, 299 F.R.D. 611, 614 n.4 (N.D. Cal. 2013) (noting that several circuit courts have "analogized" the standard applied under Rule 15(d) to the Rule 15(a) standard).  "While some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction."  *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988).  Courts permit parties to bring "new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy."  *Id.* at 473. Thus, "[w]hile the matters stated in a supplemental complaint should have some relation to the claim set forth in the original pleading, the fact that the supplemental pleading technically states a new cause of action should not be a bar to its allowance." *Id.* at 474 (quoting 3 J. Moore, *Moore's Federal Practice* ¶ 15.16[3] (1985)). And because Rule 15(d) "is a tool of judicial economy and convenience," its "use is therefore favored."  *Id.* at 473.

The Court agrees with Oovee that the pleading is more appropriately labeled as a Rule 15(d) supplemental pleading because it concerns an "event that happened after the date of the pleading." Fed. R. Civ. P. 15(d).  But whether Saber's new claims are evaluated under Rule 15(a) or Rule 15(d) makes no difference: Under either rule, Saber may assert the defamation and tortious-interference claims.  Oovee does not contend that Saber's actions led to undue delay,[5] that Saber proposed the amendment or supplementation in bad faith, that Saber failed to cure deficiencies, or that the amendment or supplementation would be unduly prejudicial or futile.

---

[5] Saber alleges Defendants released the press release on or about June 12, 2022.  Dkt. # 37-1 at 15.  Saber filed the motion to file an amended complaint four days later, on June 16.  Dkt. # 37.

*See Sonoma Cty. Ass'n of Retired Emps.*, 708 F.3d at 1117; *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 215 (N.D. Cal. 2015) ("Absent prejudice or a 'strong showing' of any other *Foman* factor, there is a presumption in favor of granting leave to supplement." (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003))). Moreover, there is at least "some relation to the claim[s] set forth in the original pleading." *Keith*, 858 F.2d at 474 (citation omitted). The allegedly defamatory statements at the center of Saber's new claims are about this very litigation. That "the supplemental pleading technically states a new cause of action should not be a bar to its allowance." *Id.* (citation omitted). And the interests of judicial economy favor allowing Saber to raise these claims: Discovery has not started, the claims are related, and there is no reason to require the new claims to proceed in a separate lawsuit.

Oovee also argues the Court should deny the motion because Saber is seeking relief on the same claims in the United Kingdom (UK). Dkt. # 40 at 12–13. Oovee alleges that Saber sought pre-litigation discovery and served Oovee with a "Letter of Claim" in the UK. *Id.* at 13. It says that a "'Letter of Claim' is the first step for initiating a UK proceeding for defamation claims under the Pre-Action Protocol for Media Communications Claims." *Id.* at 9, 13. Oovee's UK counsel declared that Saber's Letter of Claim "alleges that certain statements and a press release sent by Oovee and/or its representatives to Eurogamer, a UK-based online publication, violated UK law against defamation, malicious falsehood, breach of confidence, and conspiracy." Dkt. # 41 at 2.

The only legal authority Oovee cites to support this argument is *In re Exxon Valdez*, 318 F. App'x 545, 547 (9th Cir. 2009). In that case, the Ninth Circuit explained that while courts favor granting leave to permit supplemental pleadings, a party cannot use Rule 15(d) "'to

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 24

introduce separate, distinct, and new cause[s] of action.'" *Id.* (quoting *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir.1997)).  It determined that the district court did not abuse its discretion in denying the defendant leave to supplement its answer with a counterclaim because that claim could have been subject to a separate action as evidenced by the fact that it was already subject to a separate, pending appeal in the same court.  *Id.*

Oovee argues that, like in *Exxon*, "not only could Plaintiff's putative defamation and tortious interference claims be the subject of a separate action, but it appears that Plaintiff has already initiated filing such an action in the UK."  Dkt. # 40 at 13.  But *Exxon* involved two concurrent suits filed in U.S. courts, both of which were appealed to the Ninth Circuit.  By contrast, Oovee objects to Saber's new claims because they may one day be litigated in the UK.[6] While supplementing the pleadings in *Exxon* would have been duplicative and wasteful of judicial resources (because another U.S. court applying the same body of substantive law had already addressed the claims), the Court has been given no reason to believe that the same is true here.  Oovee has not shown, for example, that the scope of the claims in the UK and the United States are coextensive with one another, or that UK and United States law treat such claims the same.  Thus, Oovee has not demonstrated why Saber's new defamation and tortious-interference claims cannot proceed in both the UK and the United States.  Oovee may pursue similar comity-

---

[6] The declaration submitted by Oovee's UK counsel indicates only that Saber sent Oovee a "Letter of Claim."  Dkt. # 41, at 2.  While this may be the "first step" for initiating litigation in the UK, *id.*, the declaration does not suggest that a Letter of Claim represents the formal start to litigation.

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 25

based arguments in a subsequent pleading or motion to dismiss, but these arguments do not support denying Saber the opportunity to plead its claims.

### 2. Personal Jurisdiction

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).  The Ninth Circuit has adopted the doctrine of pendent personal jurisdiction. *Id.* at 1181.  "[A]court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Id.* at 1180.

Here, Oovee argues that if the Court grants its motion to dismiss (presumably with prejudice), the Court should deny Saber's Motion for Leave to File TAC for lack of personal jurisdiction. Oovee argues that Saber does not provide an independent basis for personal jurisdiction as to its potential new claims, and that, if Saber's other claims are dismissed, there would be no "anchor" claim that could provide the basis for the exercise of pendent jurisdiction over the new claims.  But because the Court is dismissing the claims in the SAC without prejudice, and granting leave to amend, this argument does not apply.  Because Oovee does not contest that the Court has personal jurisdiction over the original claims, the Court may exercise pendent personal jurisdiction as to the new claims.

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 26

## IV.

### CONCLUSION

Based on the above, the Court (1) GRANTS the Motion to Dismiss and DISMISSES Saber's Lanham Act, WCPA, and unjust enrichment claims without prejudice; [7] (2) GRANTS Saber leave to amend its complaint; and (3) GRANTS the Motion for Leave to File TAC. Saber must include all claims—including any amendments to its original claims, as well as the new claims included in its proposed TAC—in a single, third amended complaint filed no later than October 26, 2022. In light of this amended order, the Court DENIES Saber's motion for reconsideration, *see* Dkt. # 47, as moot.

Dated this 6th day of October, 2022.

John H. Chun
United States District Judge

---

[7] In its Motion to Dismiss, Oovee asks the Court to consider documents outside Saber's Second Amended Complaint. Dkt. # 27 at 12. Specifically, Oovee submits current and previous copies of *Spintires* (Dkt. # 19) and a Declaration of Michael E. Chait (Dkt. # 19) summarizing the versions of the game, as well as a copy of a *Spintires* promotional video trailer (Dkt. # 25) and a Declaration of Chait with exhibits summarizing the trailer (Dkt. # 28). Dkt. # 27 at 12. Saber moves to strike the two Chait declarations and their attachments, and the portions of Oovee's Motion to Dismiss that rely on those materials. Dkt. # 31 at 13–14. Because the Court need not, and did not, consider those materials in ruling on the motion to dismiss, the Court denies Saber's request to strike as moot.

In opposition to Oovee's Motion to Dismiss, Saber submits supplemental authority (Dkt. # 38) and asks the Court to take judicial notice of Defendant Zane Andrew Saxton's certificate (Dkt. # 39). Oovee asks the Court to strike both. Dkt. # 42. Again, the Court did not consider those materials, and denies Oovee's request to strike as moot.

AMENDED ORDER RE: DEFENDANT OOVEE LTD.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT AND
PLAINTIFF SABER INTERACTIVE INC.'S
MOTION TO FILE THIRD AMENDED COMPLAINT - 27