UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SABER INTERACTIVE INC., | Case No. 2:21-cv-01201-SKV |
| Plaintiff, | **PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| v. | |
| OOVEE, LTD., ZANE SAXTON, DEVIN MILSOM and VINCE MILSOM, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—1
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

Plaintiff Saber Interactive Inc. ("Plaintiff"), by and through its attorneys, Newman DuWors Durrance LLP, as and for its Third Amended Complaint ("Complaint") against Defendants Oovee, Ltd. ("Oovee"), Zane Saxton, Devin Milsom, and Vince Milsom (collectively, "Individual Defendants," and collectively with Oovee, "Defendants"), hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for unfair competition under the Lanham Act, in which Plaintiff, a world-renowned video-game developer, seeks monetary relief from Defendants for Defendants' misappropriation and unauthorized use in a commercially-available video game of a tractor design in which Plaintiff has ownership interests as the exclusive licensee.

2. For years, the Individual Defendants, through Oovee, have sold at retail, on a worldwide basis, a driving simulation called *Spintires*, which contains various misappropriated assets, including the design of a tractor in which Plaintiff has legal rights by virtue of an exclusive license granted to Plaintiff by the manufacturer-distributor.

3. Defendants' unauthorized use of the tractor design through the worldwide sale of *Spintires* has caused and will continue to cause Plaintiff to suffer substantial damages, for which Plaintiff seeks relief from this Court.

**JURISDICTION AND VENUE**

4. As this is an action seeking damages for unfair competition under the Lanham Act, arising from Defendant's unauthorized use of Plaintiff's trademark and trade dress, *see* 15 U.S.C. § 1125(a), this court has subject-matter jurisdiction. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1338(b).

5. Venue properly lies in this District, as it is where a substantial part of the events giving rise to Plaintiff's claims occurred, *see* 28 U.S.C. § 1391(b), and Defendants are subject to personal jurisdiction in this District, *see* 28 U.S.C. § 1400.

6. This Court has personal jurisdiction over Defendants because Defendants have purposefully directed their business activities toward and purposefully availed themselves of the privileges of conducting, transacting, and soliciting business in Bellevue, Washington; Plaintiff's

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—2
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

claims arise from the aforementioned business activities; and exercising personal jurisdiction over Defendants is reasonable.

**THE PARTIES**

7. Plaintiff Saber Interactive Inc. is a Delaware corporation with a registered office located at 2200 N Ocean Boulevard, #CU4, Fort Lauderdale, Florida 33305. Plaintiff is a video-game developer that specializes in 3D graphic art and technology and is one of the most successful providers of some of world's most popular video games, including *NBA Playgrounds* and the *Halo* franchise.

8. Defendant Oovee, Ltd., is a company registered under the laws of England and Wales with a registered office at Yare House, 62-64 Thorpe Road, Norwich, Norfolk England, NR1 1RY. Oovee purports to be in the business of developing, selling, and licensing video games and has sold the video game *Spintires*, in which Oovee incorporated a vehicle design to which Plaintiff holds an exclusive license. Oovee has sold *Spintires* through Steam, a Bellevue, Washington-based digital content distribution platform developed and operated by Valve Corporation.

9. Defendant Zane Saxton is an individual residing in the United Kingdom and is the founder, Chief Executive Officer, and sole director of Oovee. As such, Mr. Saxton has controlled all of Oovee's business decisions, including the decision to sell the video game *Spintires* through Bellevue, Washington-based Steam.

10. Defendant Devin Milsom is an individual residing in the United Kingdom and is Oovee's Chief Operating Officer. Upon information and belief, Mr. Milsom has controlled or participated in each of Oovee's business decisions at issue here, including the decision to sell the video game *Spintires* through Bellevue, Washington-based Steam.

11. Defendant Vince Milsom is an individual residing in the United Kingdom and is titled Oovee's Non-Executive Director. Upon information and belief, Mr. Milsom has controlled or participated in each of Oovee's business decisions at issue here, including the decision to sell the video game *Spintires* through Bellevue, Washington-based Steam.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—3
[2:21-cv-01201-SKV]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# FACTS

**A.  Driving simulation games feature specific vehicles licensed for game use by the vehicle manufacturer.**

12. Driving simulation games are based on the idea that a user can experience the actual performance of a specific vehicle. The games feature a particular environment—a racetrack, a city, or the wilderness, for example—and allow users to select a particular vehicle. The games are programmed so the vehicle operates as closely to the real thing as possible.

13. For example, an auto-racing video game might feature the ability to choose between a Lamborghini and a Maserati. The user expects not only that the two simulated cars would operate differently but that they would also operate as an actual Lamborghini or Maserati would operate. Rates of acceleration, handling and other performance, and even details like engine sound as well as the appearance of the vehicle are carefully reconstructed in a simulated environment.

14. Video-game users expect that, should they actually be able to drive a Lamborghini, it will handle the same as the simulated version.

15. Legitimate video-game manufacturers always obtain a license from the vehicle manufacturer to feature a particular vehicle in a game. Vehicle manufacturers wouldn't want their vehicle to operate in a manner in a simulation that is inconsistent with how it is marketed or branded. For example, the Lamborghini manufacturer would not want a simulated Lamborghini to be portrayed as accelerating slowly, or having maintenance problems, nor would it want the vehicle featured in a game about hitting pedestrians.

16. Major manufacturers have teams of employees dedicated to obtaining licenses for each vehicle offered. Obtaining a license includes negotiating not only the rate of payment but also assuring the manufacturer that the licensed vehicle design will be portrayed in a positive and realistic manner.

17. Consumers know that video games feature simulated vehicles licensed for use by the vehicle manufacturer. The fact of a license is disclosed on publicly-released build notes and other locations.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—4
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800



**B.    Plaintiffs' *Mudrunner* game features carefully-designed simulated vehicles operating in a wilderness environment, including the Kirovets tractor.**

18. Plaintiff owns and operates *Mudrunner*, which features a variety of off-road vehicles operating in a wilderness environment. Each vehicle is based on an actual vehicle design. The user can select any simulated vehicle, each of which operates differently from the others and as closely as possible to the actual vehicle.

19. Plaintiff has licensed each vehicle from the vehicle manufacturer.

20. Peterburgsky traktorny zavod JSC ("PTZ") is a Russian company known for producing tractors under the brand name "Kirovets."

21. Since its founding in 1801, PTZ has expended a significant amount of time, labor, skill, and money to produce, distribute, and advertise its equipment throughout the world. One of the most famous tractors that PTZ expended significant resources to produce, market, and sell throughout the world is the Kirovets K-700, which is pictured below:

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—5
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

22. Kirovets tractors, including the K-700 tractor pictured above, bear several distinctive, non-functional characteristics, that have given them secondary meaning over time. These include the two discrete but connected tractor parts (a front and a back), the pair of distinctive large wheels for each part, the front part having a box cabin and the extended engine cover with grill-style grate, and the back part featuring mostly just the large pair of wheels. The K700 also features small, round headlights set far apart on the front bumper.

23. The features in question are non-functional. The extended engine cover is boxy and larger than necessary to accommodate the engine. The grill-style grate does not need to be shaped the way it is for any particular function. Other engine covers on other manufacturers' tractors are more rounded, lower-profile, and have a different grate design. Likewise, the wheels and tires are distinctively shaped, with large, bulky sidewalls and deeply-recessed wells. All four are identical in shape and size. Other manufacturers have differently-shaped wheels and tires than the K700, including different-sized front and back sets. Similarly, the structure of the body with the engine and operator's compartment on the front and the rear articulated and consisting only of wheels, suspension, lights, and fenders is unique and non-functional. Other manufacturers either do not use articulation at all or place a different combination of features on the front and rear halves. Likewise, the windows and shape of the driver's compartment is boxy and unique. The particular shape of these features, like other features on the vehicle, creates a

PLAINTIFF'S THIRD AMENDED COMPLAINT
FOR DAMAGES—6
[2:21-cv-01201-SKV]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

distinctive look that has no functional purpose: There are a near-infinite number of window and body angle combinations that would serve to make a driver's compartment, but Kirovets tractors all feature the boxy, rectangular shapes shown on the K700 making it instantly recognizable. Finally, the shape and position of the headlights is not functional and there are a myriad of other design choices that would have achieved the same results. PTZ uses the headlight shape and position, among the other features, to identify the K700 as a Kirovets.

24. The popularity and success of the K-700 has led to several subsequent related models sharing a similar design. In fact, PTZ has always used the aforementioned distinctive, non-functional characteristics in the production of its tractors for the sole purpose of indicating its Kirovets brand.

25. When consumers see a tractor bearing the aforementioned distinctive, non-functional characteristics, they know it is a Kirovets brand, giving said characteristics secondary meaning.[1]

26. PTZ has been distributing its K-700-style tractors to consumers in the United States for more than a decade and continues to date to sell such tractors in the United States. Thus, consumers in the United States have also come to immediate associate the aforementioned distinctive, non-functional characteristics with the Kirovets brand.

27. Pursuant to a December 29, 2020 License Agreement, Plaintiff became an exclusive licensee with respect to various intellectual property rights related to PTZ's Kirovets tractors.

28. PTZ granted Plaintiff "the exclusive right (hereinafter the 'License') to use the LICENSOR'S IP (hereinafter the 'Licensed Rights') in the Game and in connection with the Game as [Plaintiff] shall see fit," including, but not limited to, the rights to "incorporate the LICENSOR'S IP into the Game," "reproduce the LICENSOR'S IP . . . as part of the Game," "license and distribute the Game to end users utilizing LICENSOR'S IP on any platforms and any distribution channels," "make alterations, translation, adaptation, and modifications of LICENSOR'S IP solely for the purpose of using it as part of the Game," and "use LICENSOR'S IP in any promotion and advertisement activities."

---

[1] The brand's secondary meaning is further shown by Defendants' intentional copying of the K-700 design, as explained further below.

PLAINTIFF'S THIRD AMENDED COMPLAINT  
FOR DAMAGES—7  
[2:21-cv-01201-SKV]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500  
Seattle, Washington 98121  
(206) 274-2800

29. The term "Game" refers to "off-road vehicle driving simulation game video game which feature LICENSOR'S Vehicle Design for driving or simulation."

30. The term "LICENSOR'S IP" refers to "LICENSOR'S Logo and LICENSOR'S Vehicle Design collectively."

31. "LICENSOR'S Vehicle Design" is defined as "the exterior and interior LICENSOR'S vehicle design, owned by Licensor," of the Tractor K-700 "Kirovets" (pictured above) and the Tractor K-7M "Kirovets."

32. The License is "an exclusive, worldwide right to use the LICENSOR'S IP in the Game," and PTZ "shall not grant the license to use LICENSOR'S IP to any other video game produced not by [Plaintiff]."

33. PTZ also granted Plaintiff "rights to take legal and other enforcement actions, including retroactive rights, to damages and injunctive relief against any entity or product that has previously infringed, is currently infringing or will in the future infringe on the granted rights at any time in any territory and to collect damages for such infringement."

34. PTZ warranted that "[t]here are no other agreements . . . that interfere with the Licensor's right to grant [Plaintiff] the exclusive license to the LICENSOR'S IP."

35. Plaintiff uses the Licensed K-700 design in *Mudrunner*.

36. In *Mudrunner*, users select a vehicle, which then becomes the character/protagonist for the entire game.



PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—8
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800



37. The K-700 is unique from other vehicles in *Mudrunner* because (among other differences) it is split into front and rear pieces, connected by a hinge. *Mudrunner* simulates such articulated steering to provide users with a simulated driving experience very different from other vehicles.



38. *Mudrunner* environments further simulate road conditions based on real-world physical laws. For example, a K-700 turning at a user-controlled speed and angle, at a chosen

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—9
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

level of acceleration, in several feet of mud on a path having a particular slope, would handle similar to driving the K-700 under such conditions in real-life. This realistic all-terrain driving experience using heavy duty vehicles like the K-700, without any narrative elements or fantasy storylines, is what users love about *Mudrunner*.

**C.    Defendants sell a simplistic driving simulator featuring Kirovets tractors without a license.**

39.    *Spintires* is an off-roading simulation that allows users to navigate a wilderness environment in particular vehicles. Defendants created *Spintires* by misappropriating software code owned by Plaintiff and then releasing it as their own game.

40.    *Spintires* has no or minimal artistic expression. *Spintires* allows a user to pick a vehicle and then drive it around in the simulated world. The simulated world is generic and computer-generated. There are no characters. There is no plot. There is no dialogue. The simulated world is computer-generated and entirely fictitious.

41.    The music cannot be controlled by the player, is not tied to any action, and is designed to solely be background.

42.     In driving simulations that feature fictitious rather than real-world vehicles, the appearance of nonfunctional characteristics on a vehicle is irrelevant. If the sole purpose of the simulation is to offer a virtual driving experience, then it does not matter what the vehicle's appearance is or whether it has a boxy cabin or round headlights.

43.    The use of the K700's distinct appearance has no artistic purpose to *Spintires* simulated world. Its inclusion is solely to explicitly mislead consumers into believing that PTZ endorses or sponsors *Spintires*.

44.    *Spintires* features particular off-road vehicles, each of which operates in a different manner. Like *Mudrunner*, *Spintires* attempts to duplicate the real-world experience of driving a particular vehicle. *Spintires'* vehicles are from around the world and from different manufacturers. Once a user selects the K700, the game is seen from the lens of the K700, which becomes the user's avatar for the whole game. Every touch of the controls, every response or reaction on the screen, becomes integrated with the K700 for the entire user experience of

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—10
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  playing *Spintires*.

2      45.     In November 2015, Defendants released an update to *Spintires*, which they
3  advertised using a video trailer that advertised new vehicles, including the K-700. Each vehicle
4  was described by name and shown as distinct from the other vehicles. Roughly half of the trailer
5  segment introducing those vehicles was dedicated to shots involving solely the K-700. The
6  trailer's focus on the K700 (far more than any other vehicles) advertises the K700 as the
7  centerpiece of *Spintires*.

PLAINTIFF'S THIRD AMENDED COMPLAINT
FOR DAMAGES—11
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

46. The *Spintires* version of the K700 is identical in appearance to the real thing. In both the trailer and *Spintires* itself, Defendants chose to use an identical version of the K700 to explicitly mislead as to sponsorship by PTZ. The purpose of including real-world vehicles like the K700 is to convince consumers that they can have the simulated experience of driving the real thing. Defendants know that simulations like *Spintires* feature either fictitious vehicles that are not based on real-world ones and bear no or very little resemblance to real-world vehicles, or simulations that offer the real thing. In simulations like *Spintires* that do feature real-world vehicles, those vehicles are not only endorsed by the real-world manufacturer but the manufacturer has generally tested and approved the vehicle's performance in the simulation. Consumers also know all of this, and by using an identical vehicle to the K700, Defendants explicitly mislead consumers as to PTZ's endorsement.

47. If Defendants had not wished to explicitly mislead consumers, they would have chosen a different appearance for the K700. In a video simulation like *Spintires*, Defendants have an unlimited array of design choices and could have featured an articulated vehicle that looked different. They could have called the vehicle something other than the "K700." The only purpose to making the vehicle look like a K700 and calling it a K700 was to explicitly mislead that PTZ endorsed or sponsored *Spintires*.

48. Since 2015, Defendants continued to sell *Spintires* on a worldwide basis, knowing that *Spintires* contains misappropriated assets, including the exclusively-licensed intellectual property.

49. Subsequently, Defendants obtained licenses to other vehicle designs used in *Spintires,* and inaccurately represented that they had a license to the K-700 vehicle design.

50. In 2020, Oovee released another *Spintires* update involving a new vehicle, the SHERP ARK 10x10 ATV, which was promoted as "us[ing] articulating steering like the K-700." The SHERP is a completely different vehicle than the K700 and looks very different. *Spintires* SHERP looks like the real thing just like *Spintires* K700 looks like the real thing. The only reason to feature a vehicle that looks like the SHERP and is called a SHERP is to explicitly state to consumers that SHERP sponsored and/or endorsed Defendants' use of SHERP's vehicle.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—12
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

51. An online advertisement for SHERP further noted that "SHERP is a registered trademark of Quadro International LLC and is being used under license."

52. The disclaimer further claimed that:

> All other trademarks are the property of their respective owners. All characters and vehicles appearing in Spintires® are fictitious (except where licensed). Any representations to real-life persons (living or dead), or real-world vehicle designs (except where licensed), is purely coincidental.

53. The K-700 is a real-world vehicle design. There is no possibility that the resemblance to the K700 is coincidental because the *Spintires* version is identical and features all of the distinctive, non-functional features. Defendants' claim to have licensed any "real-world vehicle designs" expressly conveyed to consumers that PTZ endorsed the use of the K-700′s vehicle design in *Spintires*. Had Defendants been honest with consumers, they would have stated that the SHERP was licensed and other real-world vehicle designs were not licensed. At the least, Defendants could have indicated that the SHERP was licensed without discussing other real-world vehicles. But by stating that real-world vehicles were either licensed or any resemblance was coincidental, Defendants expressly and explicitly misled consumers into believing that the real-world K700 design was licensed.

54. None of the Defendants nor any other person or entity associated with Defendants has ever sought or obtained authorization from PTZ or Plaintiff to use the exclusively-licensed intellectual property in *Spintires*.

55. Defendants operated a website promoting *Spintires*. That website is currently not functional but had an online forum that allowed users to post comments about the game. Defendants also participated in the forum and answered consumer questions and made statements about the game.

56. Upon information and belief, Defendants made statements on that forum that either expressly stated that PTZ or Saber endorsed the game or otherwise explicitly misled consumers into believing that it was endorsed. Records of the forum postings are not available publicly and Saber has thus been unable to review them, but discovery would reveal even deleted posts and confirm whether other express statements have been made.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—13
[2:21-cv-01201-SKV]
Newman Du Wors LLP
2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

57. One of the online platforms through which public consumers can purchase *Spintires* from Defendants is Steam, a digital content distribution platform developed and operated by Bellevue, Washington-based Valve Corporation. Consumers can also purchase Mudrunner on Steam.

58. When consumers play *Spintires*, they are likely to be confused as to whether PTZ has endorsed or sponsored or is associated with *Spintires*.

59. Consumers are also likely to be confused as to whether Plaintiff has endorsed, owns, or sponsored *Spintires*.

60. When a consumer purchases *Spintires*, Defendants profit financially from the unauthorized use of the exclusively-licensed intellectual property that they wrongfully misappropriated and incorporated into *Spintires*.

61. On or around December 30, 2020, *Spintires* was removed from Steam as a result of its unauthorized use of the exclusively-licensed intellectual property. Defendants made no effort to contest the removal or otherwise defend its unauthorized use.

**D.   Alter Ego and Joint and Several Liability**

62. Oovee's only known business address is an office occupied by an accounting firm that refused to accept service of process on Oovee's behalf.

63. Oovee has no known agent authorized to receive service. To Plaintiff's knowledge, Oovee has no physical assets, no offices, no employees, and no business other than the creation and distribution of the infringing *Spintires* game. Oovee's website is not functional, except for a forum dedicated to the *Spintires* game that appears to be unmoderated.

64. Upon information and belief, the Individual Defendants have used Oovee as an alter ego. They have failed to follow corporate formalities, intermingled assets, and used Oovee solely as a vehicle to accomplish unlawful activity. Oovee is believed to be uncapitalized or inadequately capitalized, and the Individual Defendants believed to have converted all income from *Spintires* to their own use.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—14
[2:21-cv-01201-SKV]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

65. Piercing the corporate veil is necessary because failing to do so would be an injustice allowing the Individual Defendants to benefit from their use of a shell entity to conceal their own unlawful activity.

66. Upon information and belief, Defendants, and each of them, were authorized and empowered by each other to act, and did act, as agents of each other. Each action described herein was taken with the full knowledge and consent of each Defendant, and each acted as an agent of each other towards the common purpose of profiting from illegal acts.

**E. Defamatory Statements**

67. On or about June 12, 2022, Defendants issued a press release entitled "Indie Gaming Developers Increasing at Risk of Losing IP to Ruthless Industry Giants."

68. The press release contains numerous false statements that Oovee knows to be false.

69. Defendants claim that "Saber, a large US-based gaming developer, which has recently been acquired by Embracer, sought to steal Oovee's legal right to the *Spintires* interactive software and push them out of the market" And that "Saber, a US-based gaming giant, became aware of the success of *Spintires* and stole Oovee's IP while using its resources to bully them out of the market." But Oovee knows that Saber neither stole Oovee's intellectual property nor is trying to "bully" them out of any market.

70. Defendants claim that "In a calculated and deceptive move, Saber alleged that *Spintires* incorporated computer code and technology owned by Saber. In a show of intimidation, Saber served Oovee with a cease-and-desist letter and several DMCA claims, marking the beginning of a lengthy and expensive legal battle between the two parties. As quickly became standard practice in Saber's allegations against Oovee, the legal threats, though aggressive, were unsubstantiated. Saber was unable to provide any evidence to support its claim that Oovee used Saber's technology. Oovee was confident in its case but still faced an expensive and lengthy process to get the claims dismissed. Saber made clear from the start that it was willing to drag out the baseless legal threats until Oovee could no longer afford to assert its rights." These allegations are knowingly false.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—15
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

71. Defendants claim that "Saber used Oovee's willingness to negotiate as an opportunity to sabotage the game and inflict further damage." The statement that Saber sabotaged the *Spintires* game is knowingly false.

72. Defendants claim that "Companies like Saber who are willing to engage in the most unethical and ruthless corporate practices to assert market dominance must be held accountable to avoid discouraging similar independents from sharing their innovations with the gaming industry." The allegation that Saber is "unethical" or has acted in bad faith is false and defamatory.

73. Defendants claim that "The claim by Saber is the latest in a series of lawsuits it has launched against Oovee in an effort to overwhelm Oovee with legal action, prevent Oovee from growing and developing future games, and remove *Spintires* as competition." These statements are false.

74. Defendants claim that "Since the creation of *Spintires*, Saber Interactive has sought to drive us out of the market though countless lawsuits and through its failure to pay the royalties it owes for the sequel games *Mudrunner* and *Snowrunner*." Oovee is aware that Saber has not sought to drive Oovee out of the market, owes no royalty for either *Mudrunner* or *Snowrunner*, and is not a party to the License Agreement referenced in the press release

75. These statements are false and defamatory.

76. Defendants knew the statements were false and made them intentionally.

77. The statements were published by providing them to news media.

78. Defendants are at fault for the statements.

79. Saber has actual and potential business relationships with consumers who purchase Saber's games and with distributors who market them.

80. Saber's business relationships are based in part on consumers believing that Saber is an honest and honorable company.

81. Defendants' false statements have actually and potentially disrupted current and future business relationships.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—16
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

82. Defendants know of Saber's business relationships and made the statements with the intent of disrupting them.

83. The statements are an improper means of competing with Saber.

84. Saber has been and will continue to be harmed by the statements.

85. Saber's damages exceed $100,000.

# FIRST CAUSE OF ACTION

## Unfair Competition Under the Lanham Act

86. Plaintiff incorporates by reference and repeats and realleges the allegations of the preceding paragraphs of the Complaint above as if fully set forth herein.

87. Defendants' unauthorized use in commerce of the exclusively-licensed intellectual property, including common-law trademark and trade dress, is likely to cause consumer confusion as to the association, sponsorship, or affiliation between *Spintires* and Kirovets tractors.

88. Defendants' unauthorized use in commerce of the exclusively-licensed intellectual property, including common-law trademark and trade dress, is likely to cause consumer confusion as to the association, sponsorship, or affiliation between *Spintires* and Plaintiff.

89. Defendants' unauthorized use of the exclusively-licensed intellectual property in commerce constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90. Upon information and belief, Defendants' conduct is intentional and willful.

91. As a result of Defendants' unauthorized use of the exclusively-licensed intellectual property, Defendants have realized and continue to realize financial benefits, the value of which, together with all other relief permitted under the Lanham Act, Defendants owe to Plaintiff.

92. As a result of Defendants' unauthorized use of the exclusively-licensed intellectual property, Defendants have caused substantial irreparable injury and, unless restrained from any further use, will continue to cause such irreparable injury.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—17
[2:21-cv-01201-SKV]
NEWMAN DU WORS LLP
2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

## SECOND CAUSE OF ACTION

## Unfair Competition Under Washington State Law

93. Plaintiff incorporates by reference and repeats and realleges the allegations of the preceding paragraphs of the Complaint above as if fully set forth herein.

94. Defendants' unauthorized use in commerce of the exclusively-licensed intellectual property is likely to cause consumer confusion as to the association, sponsorship, or affiliation between *Spintires* and Kirovets tractors.

95. Defendants' unauthorized use of the exclusively-licensed intellectual property in commerce constitutes an unfair business practice in violation of Washington's Consumer Protection Act, RCW 19.86.010, *et seq.*

96. Upon information and belief, Defendants' conduct is intentional and willful.

97. As a result of Defendants' unauthorized use of the exclusively-licensed intellectual property, Defendants have realized and continue to realize financial benefits, the value of which, together with all other relief permitted under RCW 19.86.010, *et seq.*, including treble damages and attorney's fees and costs of suit, Defendants owe to Plaintiff.

## THIRD CAUSE OF ACTION

## Unjust Enrichment

98. Plaintiff incorporates by reference and repeats and realleges the allegations of the preceding paragraphs of the Complaint above as if fully set forth herein.

99. Defendants have benefited and continue to benefit from the free, unauthorized use of the exclusively-licensed intellectual property.

100. Defendants have not compensated Plaintiff for their use of the exclusively-licensed intellectual property.

101. Allowing Defendants to have benefited and to continue to benefit from the free, unauthorized use of the exclusively-licensed intellectual property would be inequitable.

102. As a result of Defendants' unauthorized use of the exclusively-licensed intellectual property, Plaintiff has suffered and will continue to suffer damages.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—18
[2:21-cv-01201-SKV]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# FOURTH CAUSE OF ACTION

## Defamation

103. Plaintiff incorporates by reference and repeats and realleges the allegations of the preceding paragraphs of the Complaint above as if fully set forth herein.

104. Defendants made false statements.

105. Those statements were published.

106. Defendants knew the statements were false and are at fault for making them.

107. Saber was damaged.

# FIFTH CAUSE OF ACTION

## Tortious Interference

108. Plaintiff incorporates by reference and repeats and realleges the allegations of the preceding paragraphs of the Complaint above as if fully set forth herein.

109. Saber has existing business relationships and contracts with customers and distributors, and business expectancies with existing and future customers and existing and future distributors.

110. Defendants know of those relationships and expectancies.

111. Defendants intentionally interfered with those relationships and expectancies by using improper means and/or with an improper motive.

112. Those relationships and expectancies were disrupted.

113. Saber was damaged.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

A. Declaring that Defendants' unauthorized use of the exclusively-licensed intellectual property has violated Plaintiff's rights pursuant to the License Agreement;

B. Immediately and permanently enjoining Defendants and their officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with any of them, from the unauthorized use of the exclusively-licensed intellectual property;

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—19
[2:21-cv-01201-SKV]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

C. Impounding all copies of the exclusively-licensed intellectual property that Defendants have made or used in violation of Plaintiff's rights pursuant to the License Agreement;

D. Ordering Defendants to pay Plaintiff damages in an amount to be determined at trial but not less than $75,000;

E. Finding that each Defendant is the agent of each other Defendant and ordering joint and several liability for all damages;

F. Finding that Oovee is an alter ego of the Individual Defendants and ordering that each of them be personally liable for Oovee's actions;

G. Awarding Plaintiff attorney's fees and costs of suit; and

H. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of any and all issues so triable.

Dated: October 26, 2022

Respectfully submitted,

s/ Nathaniel Durrance
Nathaniel Durrance, WSBA No. 41627
Keith Scully, WSBA No. 28677
NEWMAN DU WORS DURRANCE LLP
2101 Fourth Avenue, Suite 1500
Seattle, WA 98121
Telephone:   (206) 274-2800
Facsimile:   (206) 274-2801
Email:   nate@newmanlaw.com

Counsel for Plaintiff
Saber Interactive, Inc.

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES—20
[2:21-cv-01201-SKV]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800